# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 ROLLAN D. MEAD**
**United States Army, Appellant**

ARMY 20110717

Headquarters, III Corps and Fort Hood
James Varley, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA; Captain Robert A. Feldmeier, JA (on brief).

For Appellee:  Lieutenant Colonel Amber J. Roach, JA; Major Catherine L. Brantley, JA; Captain Edward J. Whitford, JA (on brief).

25 February 2013

----------------------------------
OPINION OF THE COURT
----------------------------------

HAIGHT, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of drunken operation of a vehicle, wrongful use of amphetamine, and involuntary manslaughter by operating a motor vehicle in a culpably negligent manner, in violation of Articles 111, 112a and 119, Uniform Code of Military Justice, 10 U.S.C. §§ 911, 912a, 919 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for thirty-eight months, and forfeiture of all pay and allowances. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for twenty-four months, and forfeiture of all pay and allowances.

This case is before our court for review under Article 66, UCMJ. In his sole assignment of error, appellant alleges the credit awarded by the military judge,

pursuant to *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989), was both illusory and improperly calculated. This assignment of error merits discussion but no relief.

## FACTS

At trial, on 7 June and 15 August 2011, appellant was charged with and convicted of wrongful use of amphetamine, the same drug use for which he received earlier non-judicial punishment under Article 15, UCMJ. Specifically, on 3 February 2010, pursuant to Article 15, UCMJ, then Specialist Mead's battalion commander imposed the following punishment: extra duty for 45 days; forfeiture of $723.00, suspended, to be automatically remitted if not vacated before 2 August 2010; reduction to E-1; and an oral reprimand.[1]

This prior non-judicial punishment for appellant's amphetamine use was not only discussed in the stipulation of fact, the record of the Article 15, UCMJ, proceeding, DA Form 2627, was admitted into evidence as Prosecution Exhibit 2. Upon the government's offer, the military judge stated, "[a]ll right, looking at Prosecution Exhibit 2, this appears to be non-judicial punishment the accused received in February of 2010, for the same conduct the accused was convicted of at this court-martial, under Charge II, is that correct?" After both the government and the defense agreed, the military judge and the parties thoroughly discussed and agreed upon what forms of punishment had been imposed upon appellant pursuant to the Article 15, UCMJ. The defense had no objection to the DA Form 2627 being admitted into evidence.

Finally, after announcing the adjudged sentence, the military judge stated:

> When arriving at the adjudged sentence in this case, I took into account the non-judicial punishment, or NJP, the accused has already received under Article 15 of the Uniform Code of Military Justice. As a result of the NJP that was imposed by his battalion commander, Lieutenant Colonel [BH], for the wrongful use of amphetamine that he was charged with and found guilty of in the Specification of Charge II. If the accused had not received prior NJP for the offense listed in the Specification of Charge II, I would have adjudged an additional 2 months of confinement, in addition to what I just announced.

---

[1]  The record indicates the forfeiture was, in fact, remitted on 2 August 2010 and, therefore, never executed.

> In compliance with *United States versus Pierce*, 27 MJ 367, Court of Military Appeals, 1989, and *United States versus Flynn*, 39 MJ 774, Army Court of Military Review, 1984, I am going to state, on the record, the specific credit I gave the accused for his prior punishment in arriving at my adjudged sentence. In arriving at the adjudged sentence, I gave the accused credit for one 30-day month of confinement credit for the 45 days of extra duty he served, as a result of the NJP. In addition, I gave the accused one 30-day month of confinement credit for the reduction to E1 he served, as a result of the reduction at the NJP proceeding, from February 2010 to present. As the accused was already an E1 at the time of this court martial, I did not adjudge a reduction. However, if the accused had been an E4 today, I would have adjudged a reduction to E1.
>
> While case law would indicate that I have no duty to apply specific confinement credit against the adjudged sentence as a result of a prior reduction to E1 at an NJP proceeding, I believe it is within my discretion to do so, and I have chosen to do so in this case. Under the circumstances of this case, I have determined that it is appropriate to credit the accused with an additional 30-days of confinement against the confinement I ultimately adjudged, to account for the period he served as an E1, between February 2010 and present.[2]

Neither side had any question or objection to the military judge's *Pierce* credit calculation. Furthermore, when the military judge announced his understanding that the pretrial agreement's cap of twenty-four months confinement was such that the convening authority could approve the adjudged sentence except for any confinement in excess of twenty-four months, both sides echoed that same interpretation.

## LAW AND DISCUSSION

It is unquestioned that in cases where one is prosecuted for the same conduct for which non-judicial punishment has been previously imposed, "an accused must

---

[2] We interpret the military judge's explanation to indicate the military judge credited appellant with a single thirty-day period of confinement for the prior reduction in rank. Regardless, it was clear that any credit awarded by the military judge was to be applied against the adjudged sentence.

be given *complete* credit for any and all non-judicial punishment suffered: day-for-day, dollar-for-dollar, stripe for stripe." *Pierce,* 27 M.J. at 369.

*Credit Applied Against the Adjudged or Approved Sentence*

Appellant argues any *Pierce* credit to which he was entitled should have been applied against his approved sentence instead of his adjudged sentence. To do otherwise, according to appellant, confers nothing but an illusory benefit upon him. *See United States v. Ridgeway*, 48 M.J. 905 (Army Ct. Crim. App. 1998). Appellant's assertion that *Ridgeway's* mandate for meaningful *Pierce* credit requires that credit always count against the approved sentence when the pretrial agreement's sentence cap is less than the adjudged sentence paints the state of the law with too broad a brush. *Ridgeway*, by its own language, is limited to its facts, where the defense "elected not to raise the issue of credit for the prior punishment during the court-martial." *Id*. at 906. Also, *Ridgeway* requires that when applying *monetary Pierce* credit, the effect of automatic forfeitures must be considered. (emphasis added). *Ridgeway*, 48 M.J. at 906.

Just as it is well-settled that credit for prior non-judicial punishment must be given, it is similarly well-settled that the accused is the gatekeeper regarding if, when, and how prior non-judicial punishment for the same offense will be presented, considered, and credited. *See United States v. Gammons*, 51 M.J. 169, 183 (C.A.A.F. 1999). More specifically, in that role as gatekeeper, the accused governs whether *Pierce* credit will be calculated and applied by the panel, the military judge, or the convening authority. *Id*.

In this case, it is clear appellant and his counsel decided to have the military judge apply any *Pierce* credit at trial instead of requesting its application by the convening authority. The military judge summarized an early RCM 802 conference:

> We, also, went over issues of whether there'd been any pretrial confinement or pretrial punishment of the accused, as well as discussed the fact that the accused has, apparently, been punished for what has been charged as a specification of Charge II, that is the wrongful use of Amphetamines at a prior non-judicial punishment proceeding, which would appear to require that the *accused receive Pierce Credit toward any sentence adjudged by this court.* (emphasis added).

Importantly, when asked, neither side desired to contradict or add anything to the military judge's understanding. Appellant stipulated to the prior Article 15, UCMJ, proceeding and the specific punishments imposed. Although the government offered the record of the prior non-judicial punishment into evidence, the defense not only

4

had no objection but referred to that prior punishment for purposes of extenuation and mitigation in its sentencing argument.

This court has previously held that "in circumstances where a military judge awards credit for non-judicial punishment on the adjudged sentence and the punishments still exceeds [sic] the limitation of punishments in a pretrial agreement," the military judge has already satisfied *Pierce* and there is no duty for the convening authority to again award credit. *United States v. Flynn*, 39 M.J. 774, 775 (A.C.M.R. 1994); *see also United States v. Edwards*, 42 M.J. 381 (C.A.A.F. 1995). We hold so again.

### *Pierce Credit for Reduced Pay vs. Forfeited Pay*

Turning from where and when *Pierce* credit should be applied to the amount of that credit, appellant argues "stripe-for-stripe" credit mandates an accounting and restitution for any pay lost as a result of a rank reduction imposed at a prior Article 15, UCMJ, proceeding for same offenses. This assertion is based upon the unpublished opinion of this court, *United States v. Santizo*, ARMY 20100146, 2011 WL 4036106 (Army Ct. Crim. App. 31 Aug. 2011) (mem. op.), which did calculate and award credit for "forfeiture of pay that resulted from his reduction in rank." In *Santizo*, this court relied upon another unpublished opinion, *United States v. Piompino*, ARMY 20010126, 2002 WL 34571730 (Army Ct. Crim. App. 29 Mar. 2002) (mem. op.), which calculated lost pay in order to "fashion [their] own remedy" in the absence of any other suggestion of how to calculate credit for a prior reduction.

While we certainly do not hold that consideration of pay lost as a result of a prior reduction is beyond the scope of either judicial or convening authority discretion, there is no legal obligation to provide credit for such a consequence. Accordingly, we decline to do so in this case.

In *Pierce*, immediately after requiring day-for-day, dollar-for-dollar, stripe-for-stripe credit, our superior court acknowledged, "[b]ecause the types of punishments administered non-judicially and those adjudged by courts-martial are not always identical, there may be some difficulties in reconciliation." *Pierce*, 27 M.J. at 369. This reconciliation has proven even more troublesome in light of statutory provisions requiring automatic reductions and monetary forfeitures.

While converting a reduction in rank or grade to confinement credit is not prohibited, the conversion process involves potential flaws. First, *Pierce* stands for the proposition that one should not be punished twice for the same offense. It does not follow that one may not be affected in multiple fashions as a result of a singular offense. Calculation of any pay lost as a result of a previously imposed reduction in rank involves, at its core, consideration not of the actual punishment but of one of

its various consequences. Simply stated, forfeiture of pay is an authorized punishment as is reduction in rank. However, less pay due to rank reduction is but a collateral consequence.

Second, the sole focus on the financial aspect of rank reduction can result in an imperfect and unwieldy double conversion. Instead of a simple one-step conversion, appellant would have us first convert the grade reduction into a dollar amount, then equate that number to forfeiture of pay, and ultimately convert that figure into days of confinement. This equation can lead to an outcome that bears little resemblance to the starting point. For example, in this case, based upon a reduction from E-4 to E-1 for drug use, imposed via Article 15, UCMJ, eighteen months before trial, appellant now asks for 168 days of confinement credit against twenty-four months of confinement approved in a case where appellant also stands convicted of involuntary manslaughter. We decline to approve such a result. After all, the maximum punishment authorized by Article 15, UCMJ, can only deprive one's liberty for up to sixty days. Surely, a fraction should not subsume the whole.

Third, calculating the precise amount of pay lost as a direct result of a non-judicially imposed reduction is fraught with speculation. Questions abound: What did the soldier do or not do in order to mitigate the financial impact and regain rank through accelerated or, at least, timely promotion? How do administrative flags, suspensions of favorable personnel actions such as promotion, play into the equation? What about other consequences of reduction such as loss of allowances, loss of security clearances, or loss of schooling and training opportunities? When is the end point for calculation of lost pay? Which consequences had financial impact that are worthy of credit and which did not and thus should be considered monetarily insignificant? These are but a few of the virtually countless issues that arise when attempting to identify and then calculate collateral consequences resulting from a reduction in rank.

Finally, and most significantly, a cold numerical conversion of a rank reduction ignores the qualitative difference between certain punishments. Some punishments defy precise equivalencies. For example, in this case, appellant was administered an oral reprimand at his Article 15, UCMJ, proceeding, yet requests no credit for this prior punishment. Are we to assume that reprimands are indeed meaningless and of no value? Our superior court, when wrestling with the specific issue of how to provide former jeopardy credit by equating reductions and other forms of punishment, has persuasively noted:

> Upon further consideration of this issue, we conclude that
> reprimands, reductions in rank, and punitive separations
> are so qualitatively different from other punishments that
> conversion is not required as a matter of law . . . .

6

> . . . Although a change in rank has a clear monetary consequence with respect to basic pay, an individual's rank in the military involves far more than money. The primary attribute of rank is one's relative status with respect to his or her fellow members of the armed forces. Many of the central features of military life - such as assignments, privileges, responsibilities, and accountability - are directly tied to rank. Because the factors applicable to imposing a reduction in rank reflect highly individualized judgments about military status, it is not appropriate to impose a generally applicable monetary formula for crediting periods of confinement or other punishments against a sentence to reduction.

*United States v. Josey,* 58 MJ 105, 108 (C.A.A.F. 2003)*; see also United States v. Rosendahl,* 53 MJ 344 (C.A.A.F. 2000).

The above analysis echoes the last sentence of RCM 305(k) which declares that pretrial confinement credit shall not be applied against any form of punishment other than confinement, hard labor, restriction, fine, and forfeiture. While this is a case of applying credit for a reduction as opposed to credit against a reduction, it is clear that the conversion in either direction is problematic.

Accordingly, we find no error. The military judge, in his discretion, awarded thirty days of confinement for the prior reduction. There was no objection, and we do not find any requirement to convert the reduction into lost pay and then into confinement in order to satisfy *Pierce*.

## CONCLUSION

On consideration of the entire record, the submissions of the parties, we hold the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge GALLAGHER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court