**UNITED STATES**

v.

**Joshua P. GLOBKE, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCCA 200200934.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 21 Sept. 2001.

Decided 21 April 2004.

Capt James D. Valentine, USMC, Appellate Defense Counsel.

LT C.J. Hajec, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Chief Judge, VILLEMEZ, and HARRIS, Appellate Military Judges.

DORMAN, Chief Judge:

A military judge, sitting as a special court-martial, convicted the appellant, consistent with his pleas, of two specifications of larceny. The appellant's offenses violated Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 180 days, forfeiture of $400.00 pay per month for 6 months, and reduction to pay grade E–2.

Before this court the appellant has raised a single assignment of error. Specifically he alleges that:

> THE MILITARY JUDGE ERRED IN ORDERING THAT THE 30 DAY CONFINEMENT CREDIT BE REDUCED FROM THE 180 DAY ADJUDGED PERIOD OF CONFINEMENT RATHER THAN THE 150 DAY LIMITED PERIOD OF THE PRE–TRIAL [SIC] AGREEMENT.

Appellant's Brief of 31 May 2003 at 3. As relief, the appellant asks this court to either reassess the sentence or order a corrected convening authority's action that complies with the terms of the pretrial agreement. *Id.* at 5.

After carefully considering the record of trial, the appellant's assignment of error, and the Government's response, we conclude that the findings are correct in law and fact, but that the appellant is entitled to sentencing relief. Following our corrective action, we find that there are no remaining errors materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

On 15 June 2001, the appellant received nonjudicial punishment for his 8 June 2001 theft of a laptop computer, military property of the Marine Corps. The computer was valued at $3,000.00. The laptop computer was recovered just 4 days after it was stolen. The nonjudicial punishment awarded was reduction to pay grade E–3, forfeiture of

$692.00 pay per month for 2 months, and 60 days restriction. This nonjudicial punishment was imposed about a week before the appellant was scheduled to depart Okinawa, Japan, for the United States to return to civilian life upon completion of his active service. As he was in the process of shipping his personal belongings back to the United States, other items of military property were found in his shipment. He was then placed on legal hold and held beyond his enlistment to stand trial for the theft of the items found in his personal shipment.

The appellant was convicted based upon his guilty pleas. Prior to trial the appellant and the convening authority entered into a pretrial agreement. The agreement allowed the convening authority to approve any sentence adjudged, but required him to suspend confinement in excess of 150 days for the period of confinement served and 12 months thereafter.

In addition to standing trial for the theft of these newly-discovered items, the appellant was also charged with the theft of the same laptop computer for which he had previously received nonjudicial punishment. Prior to trial, during a RULE FOR COURTS-MARTIAL 802, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.) conference, the trial defense counsel informed the military judge of that fact and that he would introduce it for purposes of credit under *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989). Record at 6.

During a brief recess in the appellant's sentencing case, the trial defense counsel once again informed the military judge that he had evidence of the appellant's nonjudicial punishment. When they went back on the record, the military judge asked the trial defense counsel about the evidence. He informed the military judge that the evidence had been marked as an appellate exhibit. At that time, the military judge had the exhibit remarked as Defense Exhibit B and he asked the trial counsel if the Government had any objection to his consideration of the exhibit. There was no objection. Prior to announcing sentence, the military judge attempted to make clear that he had afforded the appellant *Pierce* credit in arriving at a sentence.

The word "confused" most accurately characterizes the discussion between the trial participants following announcement of the sentence.

Eventually, the military judge, the trial counsel, and the defense counsel all agreed that the *Pierce* credit would be taken off the adjudged sentence. They also agreed that the maximum sentence to confinement that could be approved was 150 days. Record at 55. In fact, the military judge was quite specific, stating, "The convening authority can never approve a sentence in this case more than 150 days." *Id.* at 55. It was also clear that after the appellant had served 150 days of confinement, there would be no confinement left to serve because of the *Pierce* credit. *Id.* Finally, in announcing how he had accorded the appellant *Pierce* credit, the military judge stated:

> Just so it's clear for the record, the credit that I afforded the accused was 30 days confinement. I reduced him to pay grad [sic] E–2. Without the NJP, I would have reduced him to pay grade E–2. And I forfeited $400.00 pay per month for a period of six months. Had the NJP not have been there, I would have forfeited $695.00 pay per month for a period of six months. So the accused was afforded his full credit under *U.S. v. Pierce.*

*Id.* at 56. These comments, however, do not provide any explanation as to how the appellant was to be afforded credit for 30 days of confinement credit under *Pierce*.

After trial, but before the convening authority took action in this case, the appellant submitted a clemency request, which included a request that the remaining confinement be deferred so that he could "go home earlier." This request was submitted on 15 November 2001. On 14 December 2001, the convening authority denied the request. On 4 January 2002, while the appellant remained in confinement, he submitted a request to the convening authority, asking that the remaining confinement be deferred because he had already served over 120 days. This request also noted that because of the *Pierce* Credit, there was a question of whether the maximum sentence to confinement was 120 days vice 150 days. This request was denied on 8

January 2002. The staff judge advocate (SJA) addressed this issue in his recommendation (SJAR) to the convening authority. In the SJAR, the SJA advised the convening authority that because *Pierce* credit was given by the military judge, the "pretrial agreement has no effect on the sentence adjudged." SJAR of 17 Jan 2002 at 3. The SJAR further advised the convening authority to approve the sentence as adjudged. *Id.* at 4. Accounting for "good-time credit," the appellant was actually confined for 134 days after trial.

### Discussion—Prior Punishment

■ Where a Sailor or Marine is court-martialed for an offense for which he has already been punished under Article 15, UCMJ, complete credit must be given "for any and all nonjudicial punishment suffered: day-for-day, dollar-for-dollar, stripe-for-stripe." *Pierce*, 27 M.J. at 369. The question that this case poses is whether the appellant was afforded day-for-day credit. The Government argues that he was, because confinement credits are "to be credited 'against the approved sentence, *i.e.*, the lesser of the adjudged sentence or the sentence that may be approved under the pretrial agreement.'" Government Brief of 29 Dec 2003 at 2 (citing *United States v. Spaustat*, 57 M.J. 256, 263–64 (C.A.A.F.2002)). The standard of review is *de novo*. *Id.* at 260. We conclude that the Government has overlooked the intent of the *Spaustat* decision by focusing on the language, "sentence that may be approved" rather then the clear intent of the decision which is to provide "meaningful relief." *Id.* at 263.

The Government's position also seemingly ignores the holding of our superior court in *United States v. Gammons*, 51 M.J. 169, 184 (C.A.A.F.1999).[1] There the Court of Appeals for the Armed Forces held that when the appellant raises the *Pierce* credit issue during an Article 39(a), UCMJ, session, "the

military judge will adjudicate the specific credit to be applied by the convening authority...." *Id.* at 184. Here the military judge made a specific adjudication of how the confinement credit was to be applied and the convening authority simply ignored that adjudication. The military judge clearly stated that the convening authority could not approve confinement in excess of 150 days. The convening authority, following the erroneous advice of his staff judge advocate, improperly approved 180 days. Furthermore, in approving 180 days of confinement, the convening authority failed to order the suspension of that portion of confinement in excess of 150 days, as was required by the pretrial agreement. This too was error.

When an accused is court-martialed for an offense for which punishment has already been imposed under Article 15, UCMJ, the accused is the "gatekeeper" in determining when credit will be afforded for the prior punishment. *Gammons*, 51 M.J. at 179. *Gammons* establishes the framework concerning when and how an accused is to be afforded credit, dependent upon when the appellant raises the issue.[2] First, the accused can raise the issue before sentencing, and ask the sentencing authority to consider the former punishment in arriving at a sentence. If sentencing is before members, the accused can either have the military judge "instruct the members on the specific credit to be given [or] ... simply ask that the panel give consideration to the punishment imposed at a prior NJP in adjudging a sentence." *Id.* at 184. If sentencing is done by a military judge, "the military judge will state on the record the specific credit awarded for the prior punishment." *Id.* Second, the accused can raise the issue in an Article 39(a), UCMJ, session, rather than asking that the prior punishment be considered by the sentencing authority while deliberating on the sentence. In that case, "the military

---

1. Granted, this case did not precisely follow the guidance of *Gammons*, because it appears that it was the military judge, not the appellant, who raised the issue, and thus the timing, of the application of *Pierce* credit.

2. The best approach, however, would be to treat *Pierce* credit exactly like *Allen* credit. Under that approach, the military judge would determine

how credit was to be applied for each part of the sentence, but the convening authority would apply it. The sentencing authority, either military judge or members, could "consider" the prior punishment, just as is done with *Allen* credit, understanding that the convening authority will apply the "credit" later.

judge will adjudicate the specific credit to be applied by the convening authority against the adjudged sentence in a manner similar to adjudication of credit for illegal pretrial confinement." *Id.* Third, the accused can wait, and raise the issue post-trial before either the convening authority or the appellate courts, in which case either the convening authority or the appellate court "will identify any such credit." *Id.* Again, however, in applying credit, *Pierce* makes clear that the credit is to be "day-for-day, dollar-for-dollar, stripe-for-stripe." *Pierce,* 27 M.J. at 369.

At one point in the record of trial the military judge stated that what was to happen in this case with respect to the *Pierce* credit was "clear as mud . . . ." Record at 55. The confusion could well stem from the lack of precision contained in appellate decisions concerning how to apply confinement credit, particularly where the case also involves a pretrial agreement. In *United States v. Rock,* 52 M.J. 154, 156 (C.A.A.F.1999), an attempt was made to define "the point from which the sentence is to be reduced by the credit." It proclaimed that the answer was "quite simple [in that] . . . credit against confinement awarded by a military judge *always* applies against the sentence adjudged—unless the pretrial agreement itself dictates otherwise." *Id.* at 156–57. The decision then explains the rule. Under *Rock,* where there is no pretrial agreement, the credit can only be applied to the adjudged sentence.[3] Where there is a pretrial agreement, two different outcomes may be legally obtained. Where the adjudged sentence is less than the "sentence cap negotiated in the pretrial agreement," *id.* at 157, credits can only be applied against the adjudged sentence.[4] Where the adjudged sentence exceeds the "maximum total confinement that the accused lawfully can be made to serve," under the terms of a pretrial agreement, "the credit applies against the agreement." *Id.* *Rock* also provides that "[w]here portions of that confinement have already been served,

actually or constructively, the credit applies against the agreement, otherwise the accused sentence will exceed the maximum lawful limit." *Id.*

What is not clear, and thus renders the answer not so simple, is whether credit is to be applied against the sentence that may be *approved* under the terms of the pretrial agreement or against the confinement to be served under the pretrial agreement, assuming the period of suspension is not vacated. Even where the pretrial agreement calls for the suspension of a certain portion of confinement, an accused can still be made to serve the suspended portion if the suspension is vacated. This ambiguity is carried forward in *Spaustat,* when our superior court again stated that credit is to be applied to "the lesser of the adjudged sentence or the sentence that may be *approved* under the terms of the pretrial agreement . . . ." *Spaustat,* 57 M.J. at 264. (emphasis added.) In the case before us the entire sentence to confinement could have been *approved.* The Government relies upon this ambiguity in urging this court to find no error in the facts of the case before us. We refuse to enforce the ambiguity against the appellant, and will afford him the benefit of his bargain.

 We view the credit to be applied in this case to be like the day-for-day credit afforded under *United States v. Allen,* 17 M.J. 126 (C.M.A.1984). Under *Pierce,* credit is given for prior punishment already imposed and served. Under *Allen,* credit is given for pretrial confinement for the current charges. In both situations, the accused is doing time for the same crime. With respect to confinement credit, applied post-trial, there are no rational or logical reasons to apply *Allen* and *Pierce* credits differently. Accordingly, in those cases where the convening authority is to apply *Pierce* credit for confinement already served because the military judge has neither applied the credit nor ordered a specific credit, the credit must be applied in exactly the same way as is *Allen*

---

3. In our view, that statement is factually incorrect. In fact, where there is no pretrial agreement, the credit could be applied against the approved sentence. We also believe it would be more reasonable to apply the credit against the approved sentence, rather than the adjudged sentence. Otherwise, there could be situations where the credit is totally meaningless.

4. Again, we note that the credit could be applied against the approved sentence.

credit. Where a pretrial agreement requires a convening authority to suspend a portion of the adjudged confinement, and the adjudged confinement exceeds the confinement cap of the pretrial agreement, *Pierce* credit, like *Allen* credit, applies against the sentence to confinement that can be approved under the terms of the pretrial agreement. Then, when taking action the convening authority must afford the accused the benefit of the sentencing cap. Any other application of this credit would be meaningless.[5]

We derive the above holding from guidance contained in *Spaustat*, which provides that, "such credit must be applied against the lesser of the adjudged sentence or the sentence limitation in the pretrial agreement," *id.*, 57 M.J. at 262, and in *United States v. Rock*, 52 M.J. 154 (C.A.A.F.1999). As stated in *Rock*:

> Where there is a pretrial agreement that sets out a lesser limitation than that adjudged by the court-martial, however, a different result obtains. Where the agreement establishes a maximum confinement, for example, that is less than that adjudged by the court-martial, that lesser limit becomes the maximum total confinement that the accused lawfully can be made to serve. Where portions of that confinement have already been served, actually or constructively, the credit applies against the agreement, otherwise the accused's sentence will exceed the maximum lawful limit.

*Rock*, 52 M.J. at 157. We also derive this holding from the seeming intent of the *Spaustat* decision to ensure that in applying credit for confinement actually or constructively served before trial, in cases decided after 30 August 2002, an appellant is to be

afforded "meaningful relief." *Spaustat*, 57 M.J. at 256.

■ In this case, the military judge gave credit for only two parts of the punishment the appellant received at nonjudicial punishment for the theft of the laptop computer. The military judge announced the specific credit he had afforded concerning forfeitures and reduction in rank. The military judge, however, gave no credit for the 60 days of restriction the appellant had also been awarded at the nonjudicial punishment. Rather, the trial participants agreed that the 60 days of restriction equaled 30 days of confinement and that "[t]he convening authority can never approve a sentence in this case more than 150 days." Record at 55. The convening authority was bound by that agreement. *Gammons*, 51 M.J. at 184 (holding that where the appellant does not ask the military judge to afford credit on the merits during sentencing but does raise the issue in an Article 39(a), UCMJ, session, that "the military judge will adjudicate the specific credit to be applied by the convening authority . . ."). Although bound by that determination, the convening authority did not comply with it.

■ The appellant has not been afforded meaningful credit for the 60 days of restriction he was awarded at nonjudicial punishment. Based on the erroneous advice of his SJA, the convening authority approved the entire sentence—to include 180 days of confinement. The appellant was also subjected [6] to 60 days restriction for the same offense. Ideally, what should have happened in this case is that the military judge should have told the convening authority to apply 30 days of *Pierce* credit. The convening authority could then have approved the entire sentence including 180 days confinement, suspended

---

5. For example: An accused is sentenced to 180 days confinement. Due to prior punishment, the accused is also entitled to 30 days of *Pierce* credit. Under the terms of the pretrial agreement, the convening authority can approve the sentence as adjudged, but must suspend confinement in excess of 150 days. Where the military judge has neither applied the *Pierce* credit nor ordered the convening authority to take a specified action, the convening authority could approve the entire sentence, but must suspend any approved confinement in excess of 150 days. *Pierce* credit is then applied by noting that the

accused is entitled to 30 days confinement credit under *Pierce*. Thus, the maximum number of days the accused would be required to serve in post-trial confinement would be 120 days.

6. The appellant apparently did not serve the entire restriction. Nevertheless, the military judge, without objection from the Government, determined that the appellant was entitled to 30 days of *Pierce* credit towards confinement to be served.

confinement in excess of 150 days and noted that the appellant was credited with 30 days of confinement. The appellant should have served no more than 120 days of post-trial confinement. Since that did not happen, we must now afford the appellant meaningful relief. We conclude that under the facts of this case, in which the appellant was subjected to a combined total of 210 days of "actual and constructive" confinement, the only *meaningful* relief available to us is to set aside the adjudged and approved bad-conduct discharge.[7]

We do not view our corrective action to be a windfall. First, were we to approve a sentence that merely reduced the appellant's period of confinement or forfeitures, we would afford him no relief at all. Since he was already beyond his end-of-active-service date, he was not entitled to any pay. *See United States v. Hardcastle*, 53 M.J. 299, 302 (C.A.A.F.2000); DoD Financial Management Regulations, Volume 7A, Chapter 48, ¶ 480802 of Feb 2001. Thus, the appellant would not be entitled to any back pay were we to reduce the approved confinement. Second, by requesting deferral of sentence, the appellant sought to resolve this issue before the convening authority took his action. Acting on the clearly erroneous advice of his SJA, the convening authority neither complied with the ruling of the military judge, nor with the terms of the pretrial agreement. This case is but one more example of post-trial ineptitude, and in this case that ineptitude resulted in clear and obvious prejudice to the appellant.

To provide further guidance to Navy and Marine Corps practitioners of military justice, we utilize this case to emphasize the anomaly our superior court referred to in *Spaustat*, 57 M.J. at 256. Had the military judge in this case applied the *Pierce* credit by announcing that he had adjudged 150 days of confinement rather than 180 days, the appellant's pretrial agreement would have had no impact on the sentence that the convening authority could have approved or, for that matter, upon the sentence to confinement the appellant could have been required to serve. The following table illustrates the point. For illustrative purposes we have also included application of *Allen* credit.

| | *Allen* Credit | CA Applies *Pierce* Credit | MJ Applies *Pierce* Credit | *Pierce* or *Allen* Credit, no PTA [8] |
|---|---|---|---|---|
| Sentence | 180 days | 180 days | 150 days | 180 days |
| Credit | 30 days | 30 days | 30 days | 30 days |
| Pretrial Agreement, suspends > 150 days | Same | Same | Same | None |
| Approved | 180 days | 180 days | 150 days | 180 days |
| Suspend more than | 150 days | 150 days | PTA has no application | Not applicable |
| Post-trial confinement | 120 days | 120 days | 150 days | 150 days |

The table illustrates the need for further examination of the application of *Pierce* credit by the appellate courts, or action to modify the Rules for Courts–Martial. The table also demonstrates that it is normally in an accused's best interest to raise the matter in an

---

7. The appellant has asked that we either reassess the sentence or order a corrected convening authority's action that complies with the terms of the pretrial agreement. None of the appellant's sentence to confinement was suspended. Thus, by law, it would be error to issue a corrected action that suspended any portion of the appellant's sentence. *United States v. Lamb*, 22 M.J. 518 (N.M.C.M.R.1986). In fact, the appellant's entire adjudged sentence to confinement ran, plus an additional 30 days of *Pierce* credit, which, in effect, subjected him to 210 days confinement. The maximum confinement that could have been awarded by the appellant's special court-martial was only 180 days.

8. Under this column it does not matter whether the credit is given by the military judge or the convening authority. In either case the appellant would spend 150 days in post-trial confinement.

Article 39a, UCMJ, session before the military judge to determine the amount of credit due and then have the credit applied by the convening authority, rather than the military judge. While it could be argued that an accused does not get the benefit of his pretrial agreement where the military judge applies *Pierce* credit, that is not true. The pretrial agreement did not require the convening authority to suspend 30 days of confinement, it required the suspension of confinement in excess of 150 days. In our view, however, although not technically required by *Pierce,* the convening authority should suspend confinement in excess of 120 days in the interests of justice. Such action would eliminate the anomaly. If that action were not taken in the above example, the "actual and constructive" confinement served would be 180 days.

## Conclusion

Accordingly, we affirm the findings and only that portion of the sentence that extends to confinement for 120 days, and reduction to pay grade E–2.[9]

Judge VILLEMEZ and Judge HARRIS concur.

9. We have intentionally not included forfeiture of pay to lessen the appearance of the approved sentence, but also because the appellant was not entitled to any pay.