*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and GEIS
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Michael A. PETERSON**
Machinist Mate Auxiliary Fireman Recruit (E-1), U.S. Navy
Appellant

**No. 201900144**

Decided: 24 November 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Wilbur Lee

Sentence adjudged 25 January 2019 by a special court-martial convened at Joint Base Pearl Harbor-Hickam, Hawaii, consisting of a military judge sitting alone. Sentence approved by the convening authority: confinement for six months, forfeiture of $1,100.00 pay per month for six months, and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Daniel O. Moore, JAGC, USN* (argued)
*Captain Kimberly D. Hinson, JAGC, USN* (on brief)

---

[1] The convening authority suspended confinement in excess of 128 days in accordance with a pretrial agreement.

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN* (argued)
*Major Kerry E. Friedewald, USMC* (on brief)
*Lieutenant Commander Timothy C. Ceder, JAGC, USN* (on brief)

Judge GEIS delivered the opinion of the Court, in which Senior Judge GASTON and Judge STEWART joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

GEIS, Judge:

Appellant was convicted, pursuant to his pleas, of two specifications of unauthorized absence, one specification of violating a lawful general regulation, one specification of drunken operation of a vehicle, and five specifications of wrongful drug use, in violation of Articles 86, 92, 111, and 112a, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 886, 892, 911, 912a.

He raises the following assignments of error: First, he argues that the staff judge advocate [SJA] and convening authority committed error by disregarding the military judge's application of credit under *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989), which resulted in Appellant serving eight more days' confinement than he should have. Second, he argues that the forfeitures he received at previous nonjudicial punishments [NJPs] should be credited under *Pierce* against the forfeitures he received as part of his court-martial sentence. Third, he asserts the military judge erred when he informed Appellant that the maximum punishment he could receive included forfeiture of two-thirds base pay *and allowances*. Finally, without specifically assigning it as error, he asserts that the convening authority's action contains a section entitled "Legal Error," which states that the military judge erroneously calculated Appellant's pre-trial confinement credit under *Pierce*, and that this section should be removed pursuant to *United States v. Crumpley*, 49 M.J. 538 (N.-M. Ct. Crim. App. 1998).

We find merit in the first and last assignments of error and order corrective action in our decretal paragraph below.

## I. BACKGROUND

Appellant committed a string of offenses over several months that result-ed in multiple NJPs and eventually a court-martial. He drove a vehicle while drunk in April 2018 after drinking alcohol under the age of twenty-one in vio-lation of a Navy Regulation. He received NJP for these offenses on 26 April 2018 in the form of sixty days of restriction, reduction to E-3, and forfeiture of one-half month's pay for two months. He then wrongfully used various illegal drugs in May and June 2018, and was absent without leave on both 24 May and 21 June 2018 by failing to report to his assigned place of duty, which re-sulted in additional NJP on 19 July 2018 in the form of sixty more days of restriction, reduction in rank, and forfeiture of one-half month's pay for an-other two months. He served a total of sixty-eight days of restriction from these two NJPs.[2]

After reporting late for duty on two occasions in November 2018, Appel-lant was placed in pretrial confinement [PTC], where he remained for seven-ty-eight days until his court-martial on 25 January 2019. At trial, pursuant to a pretrial agreement, Appellant pleaded guilty to many of the same offens-es for which he had already received NJP. As part of the pretrial agreement, he agreed to "waive all motions except those that are otherwise non-waivable pursuant to Rule for Courts-Martial [R.C.M.] 705(c)(1)(B)."[3] He did so in ex-change for a sentence limitation term in the pretrial agreement providing that all punishment could be approved as adjudged, but that "all confinement *in excess of fifty days (50) days [sic] plus time served* will be suspended for the period of confinement adjudged plus six months thereafter . . . ."[4]

The military judge accepted Appellant's pleas and sentenced him to con-finement for six months, forfeiture of $1,100.00 pay per month for six months, and a bad-conduct discharge [BCD]. He awarded Appellant seventy-eight days of credit under *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984), for his time in PTC. He also awarded, at Defense request, an additional thirty-four days of credit under *Pierce*, for the sixty-eight days' restriction Appellant had served as a result of his NJPs—i.e., one day of confinement credit for every two days of restriction.

---

[2] Appellant also went to a third NJP, in May 2018, but it did not involve any of the offenses that were later referred to this court-martial. R. at 94-99.

[3] App. Ex. IV at 3.

[4] App. Ex. V at 1 (emphasis added).

The military judge determined that under the terms of the pretrial agreement confinement in excess of 128 days (fifty days plus seventy-eight days of time served in PTC) would be suspended. To the 128 days of unsuspended confinement, he then applied a total of 112 days of credit—seventy-eight days of *Allen* credit for PTC and thirty-four days of *Pierce* credit for NJP restriction—and informed Appellant that he would have to serve sixteen more days in confinement.[5] Both trial and defense counsel agreed with this sixteen-day figure.[6] The military judge then adjourned the court-martial at 1513 hours on a Friday.

An hour after adjournment, the trial counsel notified the military judge by email that she believed the application of credit that he had ordered on the record was wrong and that Appellant was required to serve fifty more days of confinement, not just sixteen.[7] She advised the military judge that the correct calculation was to subtract the 112 days of credit from Appellant's adjudged sentence (as opposed to the unsuspended confinement figure) of 180 days of confinement, which came to sixty-eight days. She concluded from this that Appellant had to serve fifty more days in confinement. This revised calculation asserted by the trial counsel, as the Government now concedes, was simply wrong, and evidenced a misinterpretation of governing case law.

The trial counsel's email sparked several days of email exchanges beginning the following Monday morning when the military judge informed the parties, citing *United States v. Globke*, 59 M.J. 878 (N.-M. Ct. Crim. App. 2004), that he stood by his original calculation and that Appellant was required to serve only sixteen more days of confinement. Undeterred, the trial counsel responded that "the clear intention of the 'Confinement' paragraph in the pretrial agreement was to require the accused to serve fifty more days of confinement than the time he had already served."[8] The trial counsel's argument was based in part on the aforementioned confinement provision of the pretrial agreement.

The trial counsel attempted to persuade the military judge that "time served," as used in the pretrial agreement, included not only time spent in pretrial confinement, but also time spent on restriction as a result of Appellant's NJP punishments. She cited our unpublished opinion in *United States*

---

[5] R. at 153-54.

[6] R. at 154-55.

[7] App. Ex. VIII at 7.

[8] *Id.* at 5.

*v. Rice*, No. 200700208, 2007 CCA LEXIS 309 (N-M. Ct. Crim. App. Aug. 8, 2007), for the proposition that Appellant's *Pierce* credit should count against his *adjudged* sentence as opposed to the maximum sentence that could be executed pursuant to the pretrial agreement. In making her argument, she stated:

> Since the guilty plea, I've spoken with the CA's SJA, and he concurs that all parties were in agreement on what I stated above. [The SJA] also stated that he had extensive conversations with defense counsel about this, both before the plea and immediately after, and [the defense counsel] always indicated an understanding that if the confinement portion of [the PTA] came into effect, the accused would spend an additional 50 days in confinement.[9]

The military judge then raised the possibility that the parties may not have reached a meeting of the minds on the confinement limitation provision of the pretrial agreement and urged them to confer so that the matter could be quickly resolved. He later told the parties in an email that *Globke*, which we discuss below, was controlling and that he did "not agree that the term 'time served' as referenced in the pretrial agreement encompasses confinement credit derived from previous restriction Appellant served as a result of NJP."[10] The trial counsel responded with a lengthy email citing case law and conversations had with the convening authority noting that the command's position was in opposition to the military judge's conclusion. She stated further that if the sixteen-day figure still applied, Appellant "should be released immediately" because of his accumulation of credit for good behavior while confined in the brig. The military judge replied that he did not agree that "time served" "encompasses confinement credit derived from previous NJP restrictions."[11] He added that the PTA was "silent on the treatment of any *administrative* credit given for restriction the accused previously served for offenses to which he pleaded guilty."[12] He concluded his correspondence by explaining that:

---

[9] *Id.* at 2.

[10] *Id.* at 1-2. We find the military judge's decision to be sound on this point. He based his rationale on the "plain language" of the pretrial agreement, and his interpretation was agreed to by the parties in open court. R. at 154.

[11] *Id.* at 1.

[12] *Id.*

> This post-trial correspondence began as notification that the Court had either miscalculated the credit or misapprehended the terms of the PTA. In this case, the Court's interpretation of the PTA, and subsequent calculation of remaining confinement to be served—with which both parties initially agreed—reflects that the convening authority is to apply the Allen and Pierce credit awarded in this case against the sentence to confinement the accused was to serve under the PTA. That interpretation still stands, and I see no need for either a post-trial 39(a) or a ruling as I do not believe we have litigated any issue that requires a ruling.[13]

Finally, on Friday evening, a week after the military judge had ruled on the record in this matter and adjourned Appellant's court-martial, the assistant officer in charge of the Naval Consolidated Brig at Pearl Harbor, having consulted with the trial counsel and the convening authority's SJA, ordered Appellant's release. According to the assistant officer in charge, Appellant's release date, when accounting for the credit awarded at trial, along with credit for Appellant's good behavior ("good-time credit") in PTC, was 19 January 2019. This release date, which could not have been determined until the sentence was announced at trial on 25 January, essentially meant that, once his sentence was announced, Appellant would have been released on the day of trial if the Government had properly executed the judicially-ordered credit announced by the military judge. The additional sixteen days of confinement, which all agreed at sentencing Appellant would have to serve, was calculated to have already been earned through good-time credit during Appellant's seventy-eight days in PTC.[14]

---

[13] *Id.*

[14] We note that in addition to the push-back from the trial counsel on the military judge's ruling on *Pierce* credit, the convening authority's SJA maintained the same position when he provided his Staff Judge Advocate's Recommendation [SJAR]. See SJAR of 16 April 2019 at 2. In addition to claiming the military judge committed "legal error" that benefitted the accused, the SJA recommended that the convening authority approve a sentence that reflected the Government's calculations as to *Pierce* credit, not the military judge's. *Id.*

## II. DISCUSSION

### A. Judicially-Ordered *Pierce* Credit for Prior NJP Restriction

Appellant asserts the SJA and the convening authority erred in not complying with the military judge's application of *Pierce* credit, that as a result Appellant served eight more days in confinement than he should have, and that this prejudice warrants setting aside the BCD. The Government concedes the military judge properly applied *Pierce* and that Appellant was prejudiced by the Government's failure to abide by the judge's order,[15] but argues that setting aside the BCD would be disproportionate to the harm Appellant suffered and that disapproval of eight days of forfeitures would be an appropriate remedy. We review issues surrounding the impact of prior NJP punishments on a court-martial sentence de novo. *Globke*, 59 M.J. at 881.

"Where a Sailor or Marine is court-martialed for an offense for which he has already been punished under Article 15, UCMJ, complete credit must be given 'for any and all nonjudicial punishment suffered: day-for-day, dollar-for-dollar, stripe-for-stripe.'" *Globke*, 59 M.J. at 881 (quoting *Pierce*, 27 M.J. at 369). In applying credit to Appellant's sentence, the military judge relied on *Globke*, in which this Court stated that *Pierce* credit must be applied against the lesser of the adjudged sentence or the sentence limitation provision of the pretrial agreement. *Id.* at 883 (citing *United States v. Spaustat*, 57 M.J. 256, 262 (C.A.A.F. 2002)). In *Globke*, the military judge's sentence included 180 days of confinement, and the pretrial agreement provided for suspension of confinement in excess of 150 days. The military judge misapplied thirty days of *Pierce* confinement credit (for sixty days of prior NJP restriction) against the adjudged 180-day sentence, rather than the pretrial agreement's 150-day sentence limitation. We held that the thirty-day credit should have been applied against the 150-day sentence limitation, so that the appellant would be afforded "meaningful credit" for the sixty days of restriction he was awarded at nonjudicial punishment, and concluded that he should have served no more than 120 days of post-trial confinement. *Id.* at 883-84. As we stated in *Globke*:

---

[15] As neither Appellant nor the Government challenges the brig's calculation of how much good-time credit Appellant had earned for release, we do not address how such credit was applied, nor is it appropriate for us to do so. "The UCMJ and the Manual for Courts-Martial make no provision for good time credit. The responsibility for determining how much good time credit, if any, will be awarded is an administrative responsibility, vested in the commander of the confinement facility." *United States v. Spaustat*, 57 M.J. 256, 263 (C.A.A.F. 2002).

> [I]n those cases where the convening authority is to apply *Pierce* credit for confinement already served because the military judge has neither applied the credit nor ordered a specific credit, the credit must be applied in exactly the same way as is *Allen* credit. Where a pretrial agreement requires a convening authority to suspend a portion of the adjudged confinement, and the adjudged confinement exceeds the confinement cap of the pretrial agreement, *Pierce* credit, like *Allen* credit, applies against the sentence to confinement that can be approved under the terms of the pretrial agreement. Then, when taking action the convening authority must afford the accused the benefit of the sentencing cap. Any other application of this credit would be meaningless.

*Id.* at 882-83.[16]

We further concluded that, with respect to remedy, "the only *meaningful* relief available . . . is to set aside the adjudged and approved bad-conduct discharge." *Id.* at 884 (emphasis in original). We found that reducing Appellant's period of confinement or the amount of his forfeitures would afford him no relief because he had already served the confinement, was already out of the Service, and was not entitled to pay and would not be entitled to back pay under the appropriate service regulations. *Id.* We also emphasized that the SJA's clearly erroneous advice and the convening authority's failure to comply with either the military judge's ruling or the terms of the pretrial agreement compounded the error. *Id.* at 884. There, as here, "the military judge made a specific adjudication of how the confinement credit was to be applied and the convening authority simply ignored that adjudication"; instead, the convening authority approved the *full* 180 days of adjudged confinement and even failed to suspend the portion of confinement required by the pretrial agreement. *Id.* at 881.

---

[16] Throughout the post-trial re-litigation of the *Pierce* credit issue, the Government erroneously maintained that our unpublished decision in *Rice* bound the military judge to apply *Pierce* credit to the *adjudged* sentence. As the military judge correctly identified, it is our published opinion in *Globke* that is binding on this matter, and to the extent it conflicts with *Rice*, *Globke* controls. Regardless, *Rice* bases a fundamental part of its holding on *United States v. Rock*, 52 M.J. 154 (C.A.A.F. 1999). There, our superior court explained that where there is a pretrial agreement that limits the confinement an accused can be made to serve, credit must be applied to the lesser of the adjudged confinement or the maximum confinement possible under the pretrial agreement.

As we stated in *Globke*, we hold that when a military judge adjudicates and orders how specific credit will be applied in a case, the Government—i.e., the trial counsel and by extension the SJA and the convening authority—is "bound by that determination." *Id.* at 883. If the Government disagrees with the military judge's ruling, it may seek reconsideration of that ruling through the formal procedures available under the Rules for Courts-Martial. *See, e.g.*, R.C.M. 905(f) (motions for reconsideration); R.C.M. 1104 (post-trial motions and proceedings). It may not hold it in abeyance or disregard it.

Similarly, the Government should not seek "reconsideration" through a week-long re-litigation of an issue by email between counsel and the military judge while an accused remains in the brig beyond his would-be release date. As our sister court has stated, the binding nature of a military judge's ruling exists to ensure that the military judge can properly fulfill his or her role as a bulwark "between the vast authority of command and the relatively concise list of rights enjoyed by military members accused of crime." *United States v. Mahoney*, 36 M.J. 679, 686 (A.F.C.M.R. 1992). It is for this reason that the rulings of a military judge are to be complied with, not subjected to informal post-hoc criticisms or recalcitrance by litigants, staff judge advocates, or convening authorities, who must pursue any objections they may have to a ruling through the procedures provided in the Rules for Courts-Martial.

*Mahoney* is instructive in this regard. In that case, after an accused was found guilty of rape and assault, his commander ordered his confinement pending sentencing. When the military judge became aware of this, he reconvened the court-martial in an Article 39(a), UCMJ, hearing to address the need for the accused's confinement, ultimately releasing him under the authority granted him under R.C.M. 305(g) and (j). However, after adjournment of the hearing, the accused's commander *again* ordered the accused into confinement, in direct contradiction to the military judge's release order. The military judge ordered ten days' credit for the day of illegal confinement. *Id.* at 681. At the request of Colonel Mahoney, the Chief Circuit Military Judge, the general court-martial convening authority ordered a command investigation. After the convening authority refused to release the report of the command investigation to the Colonel Mahoney, he detailed himself to the case. Thereafter, the convening authority released the report to Colonel Mahoney. The report revealed that the commander believed the military judge's decision was "obviously wrong," and that the commander had a "better grasp of the case than the military judge" such that he was better suited to determine the need for the accused to be confined. *Id.* After considering the results of the command investigation, Colonel Mahoney ordered confinement credit (in addition to any other credit to which the accused was entitled) of eighteen months. *Id.* at 697. Colonel Mahoney's order reflected that "he had observed

'no previous example of such cavalier disregard for due process and the rule of law' in 16 years of experience as a military judge and appellate judge." *Id.* at 684.

The dispute between the military judge and commander resulted in the government petitioning the Air Force Court of Criminal Appeals for a writ of prohibition to order Colonel Mahoney to desist in his involvement in the case. In denying the writ, our sister court reaffirmed the axiom that a "convening authority may not flout the judge's authority with impunity." *Id.* at 686 (quoting *United States v. Schaff*, 29 M.J. 60, 65-66 (C.M.A. 1989)). Further, the court endorsed the notion that a measured response to command indifference to a judicial ruling may involve fashioning a remedy sufficient to deter similar conduct in the future. *Id.* at 686.

While the facts here are not as egregious as those in *Mahoney*, they do present an arguably more inexcusable disregard of the military judge's clear (and correct) ruling on the record than in *Globke*. The trial counsel decided, in consultation with the SJA, to dispute the military judge's application of *Pierce* and *Allen* credit, despite assenting to this application hours prior on the record. That this behavior was in part due to a misapprehension of the law shared by all parties within the Government is no excuse. Meanwhile, while the record is unclear as to why, the military judge's binding ruling was apparently not conveyed to the brig, as Appellant remained in confinement rather than being released as he would have been under the *judicially-ordered* application of credit when combined with Appellant's accumulated good-time credit.

Even if we were to overlook the Government's initial decision to recalculate the military judge's legally binding determination immediately after the trial concluded on a Friday afternoon, the trial counsel had a clear answer from the military judge the following Monday, when the military judge restated his position via email. The trial counsel nevertheless continued to argue with the judge in a series of emails throughout the week until finally yielding to the military judge's position on Friday. As a result, Appellant served not just an additional weekend in the brig, which would be concerning but potentially understandable, but over a week of unauthorized confinement, which is unacceptable under these circumstances.

While the military judge plays a critical role in protecting an accused from Government overreach, so, too, does the trial counsel, as a "representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *United States v. Andrews*, 77 M.J. 393, 404 (C.A.A.F. 2018) (quoting *Berger v. United States*, 295 U.S. 78, 88

(1935)). The trial counsel is thus "in a peculiar and very definite sense the servant of the law."[17] *Id.* When a trial counsel decides, alone or in consultation with an SJA or convening authority, that the military judge did not do his job correctly, and embarks on a course of action resulting in the failure of a judicially-ordered sentence and credit calculation to be timely carried out to the detriment of a Service Member, the trial counsel is not doing justice.

Even if the trial counsel here was merely providing a voice to the convening authority and SJA, or had a good-faith disagreement over the military judge's ruling, the answer can never be to obstruct the administration of a judicial ruling through off-record post-trial litigation. We recognize that all parties may have been operating under the erroneous but good-faith belief that Appellant would not be released from the brig until sixteen days after trial, and thus the trial counsel may not have thought Appellant was being kept in confinement any longer than he should have been. But had the Government properly ensured that the military judge's credit ruling was carried out by brig officials rather than held in abeyance or disregarded, it would have determined Appellant's release date based on his good-time credit on the day of his trial, rather than, apparently, the day of his eventual release.

What remedy is appropriate for the Government's usurpation of the military judge's authority to determine how judicially-ordered credit will be applied, when such conduct causes an accused to serve over a week of additional confinement? In fashioning a remedy, we must bear in mind that the accused's deprivation of liberty occurred because the Government, instead of ensuring the military judge's ruling was timely carried into effect, chose instead to hold it in abeyance and re-litigate it via email. Appellant's obligated term of active service has expired, he has been on appellate leave since his release from active duty, and we do not believe that setting aside some amount of forfeitures, as the Government suggests, would afford meaningful relief in light of the harm he suffered. Moreover, we do not believe that set-

---

[17] To that end, trial counsel must discharge her duties in recognition that "[n]o authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish . . . counsel . . . with respect to any . . . exercise of . . . [her] functions in the conduct of [a court-martial] proceeding." Article 37(a), UCMJ. *See also United States v. Hamilton*, 41 M.J. 32, 37 (C.M.A. 1994) ("Even though an SJA is neither a commander nor a convening authority . . . actions by an SJA may constitute unlawful command influence, because 'a staff judge advocate generally acts with the mantle of command authority.'") (quoting *United States v. Kitts,* 23 M.J. 105, 108 (C.M.A. 1986)).

ting aside forfeitures would provide a deterrent effect commensurate with the actions taken by the Government in this case.

From the trial counsel's pushback to the military judge's ruling, to the SJA tainting his recommendation to the convening authority with erroneous advice that the military judge committed legal error to the benefit of the accused,[18] the Government's actions merit significant redress by this Court. We conclude that the only meaningful relief available is to set aside the BCD, which we find appropriate under the circumstances and order in our decretal paragraph. In granting this relief, we do not suggest that a bad-conduct discharge is the sentencing equivalent of eight days of unlawful confinement. However, where the Government's actions demonstrate a disregard for the orders of the military judge and result in the unlawful deprivation of the liberty of a Sailor or Marine, such relief is justified.[19]

## B. Waiver of *Pierce* Credit for Prior NJP Forfeitures

Appellant also asserts, for the first time on appeal, that he is entitled to *Pierce* credit for the forfeitures imposed via NJP for offenses that were later adjudicated at his court-martial. At trial, Appellant sought *Pierce* credit only for the prior NJP restriction he served; he did not pursue credit from either the military judge or the convening authority for the prior forfeitures he received. He contends that he can raise his entitlement to *Pierce* credit for forfeitures with this Court, relying principally on *United States v. Gammons*, 51 M.J. 169 (C.A.A.F. 1999). The Government counters that Appellant affirmatively waived any entitlement to forfeiture credit when his trial defense counsel actively sought *Pierce* credit at trial only for his prior NJP restriction, even after the military judge adjudged a sentence that included forfeitures.

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citation and internal quotation marks omitted).

---

[18] It is possible that but for the SJA's assertion that the accused had unjustifiably benefited from some error by the military judge, the convening authority would have viewed his final action differently.

[19] We note that Appellant, in his pretrial agreement, waived his right to an administrative discharge board, and the conduct to which he pleaded guilty can be considered by the separation authority in determining whether it warrants administrative discharge under other-than-honorable (OTH) conditions. App. Ex. IV, para. 12(f).

Article 15(f), UCMJ states:

> The imposition and enforcement of disciplinary punishment
> under [Article 15] for any act or omission is not a bar to trial by
> court-martial for a serious crime or offense growing out of the
> same act or omission, and not properly punishable under this
> article; *but the fact that a disciplinary punishment has been en-*
> *forced may be shown by the accused upon trial, and when so*
> *shown shall be considered in determining the measure of pun-*
> *ishment to be adjudged in the event of a finding of guilty*.

(emphasis added).

In *Gammons*, our superior court re-stated its interpretation of the itali-
cized language to mean "an accused must be given *complete* credit for any
and all nonjudicial punishment suffered: day-for-day, dollar-for-dollar, stripe-
for-stripe." 51 M.J. at 183 (quoting *Pierce*, 27 M.J. at 369 (emphasis in origi-
nal)). It added that an accused may seek such credit from the military judge
at trial (either for consideration as mitigation during sentencing or as credit
to be applied against the adjudged sentence) or before the convening authori-
ty after trial; and, "if the issue is raised before the Court of Criminal Appeals,
that court will identify any such credit" and then "either reassess the sen-
tence or order that the case be returned to the convening authority for fur-
ther action." *Id*. The court in *Gammons* thus viewed the accused as "the gate-
keeper" who determines how and when to raise the issue of *Pierce* credit, with
one important caveat:

> Absent a collateral issue, such as ineffective assistance of coun-
> sel, failure to raise the issue of *mitigation* based upon the rec-
> ord of a previous NJP for the same offense prior to action by
> the convening authority waives an allegation that the court-
> martial or convening authority erred by failing to consider the
> record of the prior NJP.

*Id*. (emphasis added).

Recently, our superior court broadened this caveat to include not just fail-
ing to raise the issue of mitigation based on a prior NJP, but also failing to
seek *credit* for the prior NJP against the adjudged sentence. In *United States*
*v. Haynes*, 79 M.J. 17 (C.A.A.F. 2019), the military judge informed the parties
at trial that, "based upon information on the charge sheet, the accused is to
be credited with 107 days of pretrial confinement credit [under *Allen*], is that
correct?" and the trial defense counsel replied, "Yes, Your Honor." *Id*. at 19.
The court found that because "[t]he military judge did not ask a vague, open-
ended question regarding credit generally, but instead couched his question
in terms of 'pretrial confinement credit,'" and because "*Pierce* credit is a type

of confinement credit," the exchange between the military judge and the defense counsel concerned "confinement credit in the broad sense." *Id*. at 20. The court held that by agreeing with the amount of PTC credit and not pursuing any form of *Pierce* credit, the appellant "affirmatively acknowledged that he was not entitled to any additional confinement credit," and his counsel's express agreement in response to the military judge's direct question amounted to "an affirmative waiver" of *Pierce* credit for prior NJP restriction, which could not then be pursued for the first time on appeal. *Id*. at 19.[20]

Here, Appellant raised the issue of his prior NJPs to pursue *Pierce* credit for the 68 days of prior restriction he had served—for which he received 34 days' confinement credit from the military judge. Although the fact that he had also been awarded forfeitures was reflected on the same NJP records he submitted for the court's consideration, Appellant was neither asked about nor requested credit of any kind for those prior forfeitures, even after the military judge announced a sentence that included forfeitures. Rather, his counsel informed the military judge during the Defense sentencing argument that "we are going to ask you for *Pierce* Credit for the days of restriction, he was NJP'd. You have that evidence in front of you. He served that, that's certainly what the credit's there for."[21]

We hold that where an accused raises the issue of a prior NJP and opts to seek *Pierce* credit only for part of the NJP sentence, to the exclusion of the other component parts, he waives his right to *Pierce* credit for the other parts that he does not pursue either at trial or with the convening authority. As both Appellant and the Government conceded during oral argument, an NJP sentence is a unitary sentence, such that one component part is not severable from the other component parts. An accused cannot therefore break apart the segments of an NJP sentence and parcel out requests for credit for each seg-

---

[20] Though the majority opinion in *Haynes* did not address whether *Pierce* credit can generally be raised for the first time on appeal, two judges homed in on this issue in their concurrences. Judge Ohlson found that, under *Gammons*, the appellant should have been able to raise the issue on appeal. *Id*. at 21 (Ohlson, J., concurring). Judge Maggs, on the other hand, concluded that the majority opinion "implicitly call[ed] the validity of the *Gammons* guidance into question," such that "[a]n accused who does not ask for *Pierce* credit when answering the question [about PTC credit] now waives the opportunity to request *Pierce* credit on appeal." *Haynes*, 79 M.J. at 24 (Maggs, J., concurring). Judge Maggs concluded that "the clear implication of the opinions in this case is that trial defense counsel should raise *Pierce* credit before appeal or risk losing it." *Id*.

[21] R. at 147.

ment at separate stages of the court-martial process—at trial, with the convening authority, and before the appellate court. Thus, it follows that if an accused raises the issue of credit for one part of the NJP sentence, such as restriction, then by implication he is waiving the pursuit of credit for the other parts of that sentence, such as forfeitures or reduction in rank. This is especially true where, as here, Appellant elected not to discuss the other aspects of the NJP sentences with the military judge, and elected to waive all non-waivable motions as a negotiated term of his pretrial agreement.

Appellant asserted at oral argument that because the written NJP records were submitted to the military judge for consideration of the restriction component of *Pierce* credit, the entire NJP sentences were before the court and the military judge simply did not act on the forfeiture component; therefore, Appellant suggests, the issue of credit for this component was preserved, not waived. We disagree. Although *Pierce* says that an accused "must" be given credit for prior restriction, forfeitures, and reduction in rank, this statement rests on the presumption that an accused, as gatekeeper, is actively seeking credit for each portion of the NJP sentence from either the military judge or the convening authority. *See Pierce*, 27 M.J. at 369 ("Presumably, the best place to repose the responsibility to ensure that credit is given is the convening authority."). As our superior court has repeatedly emphasized, *Pierce* credit "is not automatic" and relies on the accused to determine if and how any prior NJP punishment should be addressed or taken into consideration by the sentencing authority. *United States v. Bracey*, 56 M.J. 387, 388 (C.A.A.F. 2002).

Here, Appellant's argument is undermined by the fact that Appellant specifically discussed and pursued *Pierce* credit for prior restriction with the military judge, but opted not to discuss or pursue *Pierce* credit for prior forfeitures with either the military judge or convening authority. Appellant may have had a strategic reason not to pursue "dollar for dollar" credit when discussing *Pierce* credit with the military judge, and we do not second-guess this decision. However, since he chose to discuss and pursue *Pierce* credit for only one part of what the parties on appeal concede is a unitary sentence, and not any other part, he waived his right to pursue *Pierce* credit on appeal for the other parts.[22]

---

[22] Requiring the trial defense counsel to ask for this credit is consistent with the principle that it is counsel's duty to seek relief for his or her client. The military judge cannot assume what the accused wants, just as the military judge cannot assume that the accused wants any specific sentence if counsel does not ask for one.

We do not find waiver here lightly. Waiver requires "the 'intentional relinquishment or abandonment of a known right.'" *Haynes*, 79 M.J. at 19 (quoting *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F 2018)). Appellant contends that he did not intentionally relinquish his entitlement to forfeiture credit by bringing up only restriction credit from his NJPs, and that *Gammons* affords him the option of seeking credit for the forfeitures from the convening authority or even from this Court. This is not an unreasonable position. *See Haynes*, 79 M.J. at 20 (Ohlson, J., concurring) ("Appellant had an objectively reasonable belief *based on this Court's own precedents* that he did not have to raise the *Pierce* credit issue at his court-martial but instead could wait and raise the issue later.") (emphasis in original).

However, to the extent *Gammons* ever afforded an appellant, as gatekeeper, the ability to pursue *Pierce* credit piecemeal at different adjudicative levels, we believe *Haynes* has now shut that gate. In *Haynes*, our superior court found that the appellant waived his right to pursue confinement credit under *Pierce* for prior restriction on appeal merely by uttering the words, "Yes, Your Honor," to the military judge's standard question about PTC credit under *Allen. Haynes*, 79 M.J. at 19. Here, far from answering a standard question about *Allen* credit, Appellant specifically raised, requested, and obtained *Pierce* credit for 68 days of restriction that he served as a result of prior NJPs. Appellant's counsel was thus aware of *Pierce* credit at trial, and by extension, aware that *Pierce* credit could be granted for prior forfeitures as well as prior restriction. *See United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2000) (counsel are presumed competent). He could equally have pursued credit for the forfeitures imposed by those same NJPs, consistent with *Pierce*'s memorable rule of "day-for-day, dollar-for-dollar, stripe-for-stripe" credit. *Pierce*, 27 M.J. at 369. Yet he chose not to do so. This is the "intentional relinquishment or abandonment of a known right." *Haynes*, 79 M.J. at 19.

In *Haynes*, the court held that a discussion of the issue of pretrial confinement credit necessarily encompassed the issue of *Pierce* credit for prior NJP restriction because they involved similar types of credit. If confinement credit under *Allen* (for pretrial confinement) and under *Pierce* (for prior NJP restriction) are so closely related that a discussion of one is a discussion of the other, then it follows even more strongly that a discussion of *Pierce* credit for one part of a prior NJP sentence is a discussion of the other parts of that same NJP sentence for which credit is equally pursuable under the very same authority, *Pierce*. In other words, if *Pierce* credit for restriction is encompassed (and by implication waived) when *Allen* credit for PTC is discussed, it follows that when *Pierce* credit for one part of a unitary NJP sentence is discussed, then all parts of that same NJP sentence are encompassed in that

discussion, such that *Pierce* credit for any parts not requested or otherwise pursued at that time is waived on appeal.[23]

"The purpose of the so-called raise-or-waive rule is to promote the efficiency of the entire justice system by requiring the parties to advance their claims at trial, where the underlying facts can best be determined." *United States v. King*, 58 M.J. 110, 114 (C.A.A.F 2003). In *King*, the court held that an accused waives credit for pretrial restriction tantamount to confinement under *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985), by not seeking such credit at trial. *King*, 58 M.J. at 111-12. Similarly, in *United States v. Chapa*, the court held that because the appellant "did not assert [at trial] that his restriction was tantamount to confinement, [and] did not assert a violation of the requirements for review of pretrial restraint under R.C.M. 305 . . . any issue founded on noncompliance with R.C.M. 305 was waived." 57 M.J. 140, 141 (C.A.A.F. 2002). Our superior court's holding in *Haynes* dictates a similar conclusion here with respect to *Pierce* credit.

Though we find waiver in this case, we are aware that we have the authority to disregard that waiver in favor of Appellant under Article 66(b) of the UCMJ, as interpreted by *United States v. Chin*, 75 M.J. 220, 222-23 (C.A.A.F 2016) (holding that Courts of Criminal Appeals "are required to assess the entire record to determine whether to leave an accused's waiver intact or to correct the error"). In *United States v. Schmidt*, we were asked to exercise this power in the context of an appellant's waiver of proposed instructions by the military judge to a panel of members, but we declined the invitation to do so, concluding the matter was better left for trial defense counsel. 80 M.J. 586, 602 (N.-M. Ct. Crim. App. 2020) ("Given [defense counsel's] ability to confront these issues head-on at the trial level, his affirmative declination to do so despite repeated inquiries by the military judge is precisely why the principle of waiver exists."). As discussed more fully above, we decline to exercise our power under *Chin* for a similar reason here, and we caution counsel going forward to specifically seek any and all forms of *Pierce* credit before the case reaches this Court. *See Haynes*, 79 M.J. at 24 (Maggs,

---

[23] In reaching this conclusion, we find it significant that it was Appellant who affirmatively sought *Pierce* credit for the prior NJP restriction at trial. Thus, this is not a case where the Government introduced the NJP in sentencing, taking away the accused's "gatekeeper" role as set out in *Gammons*, 51 M.J. at 182, and the Defense had to decide whether to respond by seeking credit. *See United States v. Edwards*, 54 M.J. 761, 762 (N.-M. Ct. Crim. App. 2000) (accused entitled to *Pierce* credit on appeal when he never sought it below).

J., concurring) ("[T]he clear implication of the opinions in this case is that trial defense counsel should raise *Pierce* credit before appeal or risk losing it.")

## C. Military Judge's Statement About Pay and Allowances

Appellant summarily claims that the military judge committed error by informing him, following the providence inquiry, that his sentence could include "[f]orfeiture of two-thirds of pay *and allowances* per month for 1-year."[24] As the Government concedes, the statement that the maximum punishment at a special court-martial can include forfeiture of allowances is erroneous. *See* UCMJ art. 19. However, we find no prejudice resulting from this statement, which based on the record as a whole appears to have been a mere slip of the tongue. Appellant makes no argument that his decision to plead guilty or appear before a military judge alone would have been different but for this statement, and his own counsel's correct statement to the military judge about the maximum punishment indicates that Appellant was advised of and knew the correct maximum punishment.

Appellant also does not claim, and we do not find, that his sentence included any forfeiture of allowances. The Convening Authority's Action approving the sentence specifically states that the forfeitures are to Appellant's "pay" and does not mention allowances. Since the sentence that was executed did not include allowances, we conclude that Appellant suffered no prejudice from the military judge's statement, and thus this assignment of error merits no relief. *See* UCMJ art. 59 (requiring a determination that any error "materially prejudices the substantial rights of the accused").

## D. Correction of Court-Martial Records

The Government and Appellant agree that the SJA Recommendation and the Convening Authority's Action each contain a section entitled "Legal Error," that should be removed pursuant to *United States v. Crumpley*, which holds that an accused is entitled to have his military records be accurate. 49 M.J. 538, 539 (N.-M. Ct. Crim. App. 1999). We agree that the court-martial order should be revised to remove this incorrect section which purports to dispute the military judge's calculation of confinement credit.

---

[24] R. at 62 (emphasis added).

### III. CONCLUSION

After careful consideration of the record, the briefs and oral arguments of appellate counsel, and other post-trial submissions, we order that Appellant's bad-conduct discharge be **SET ASIDE**. We also order that the supplemental court-martial order remove the section entitled "Legal Error." The findings and only so much of the sentence that includes confinement for six months and forfeiture of $1,100.00 per month for six months are **AFFIRMED.**

Senior Judge GASTON and Judge STEWART concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court